IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TODD LINDLEY,** | § | |
| **LINDLEY & ASSOCIATES, and** | § | |
| **CARLA LINDLEY,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-1476-L** |
| | § | |
| **HACKARD & HOLT,** | § | |
| **MICHAEL A. HACKARD, individually,** | § | |
| **and THEODORE J. HOLT, individually,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment, filed February 5, 2007. The court also has before it several related motions: Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence and Brief in Support, filed February 28, 2007; Defendants' Evidentiary Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence and Brief in Support, filed March 15, 2007; and Plaintiffs' Motion to Strike Defendants' Out-of-Time Evidence Filed March 14, 2007 and Mislabled Appendix to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence, filed March 20, 2007. After a careful review of all the motions, responses, replies, and related briefs, the record, and the applicable law, the court **denies** Defendants' Motion for Summary Judgment in all respects, except it **dismisses** Carla Lindley, as she is an improper plaintiff; **denies as moot** Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence; **denies as moot** Defendants' Evidentiary Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence; and **denies as moot** Plaintiffs' Motion to Strike

Defendants' Out-of-Time Evidence Filed March 14, 2007 and Mislabled Appendix to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is a breach of contract suit brought by Todd Lindley ("Lindley"), his wife Carla Lindley, and his law firm Lindley & Associates (collectively "Plaintiffs") against Defendants Hackard & Holt, Michael A. Hackard ("Hackard"), and Theodore J. Holt ("Holt") (collectively "Defendants") on July 25, 2005.[1] Lindley & Associates is a law firm in Dallas, Texas, with Todd Lindley as its sole partner. Hackard & Holt is a law partnership with its principal place of business in California. In October, 2001, the parties agreed to work together to bring Fen-Phen diet drug cases against drug manufacturers. Lindley contends that he was to handle the intake and screening of Fen-Phen users, and to refer promising cases to Defendants for the actual litigation and settlement negotiations. In short, Lindley characterizes his role as a referring or "forwarding" attorney. Defendants, on the other hand, contend that Lindley was not a mere forwarding attorney, and that his duties under the contract obligated him to work together with Defendants to litigate these complex drug cases. Plaintiffs now allege that Defendants breached their contract to pay referral fees.[2] The parties did not memorialize their agreement in a formal contract, or set forth the terms of each party's duties to their joint cases in writing. Instead, the only written instruments addressing

---

[1] Todd Lindley and Lindley & Associates brought the suit July 25, 2005. Carla Lindley was added as a plaintiff through the Second Amended Complaint on October 17, 2006.

[2] While primarily a breach of contract suit, Plaintiffs also allege conversion and partnership liability as to the individual defendants Hackard and Holt. They also seek declaratory judgment, attorney's fees, injunctive relief, and request the court to impose a constructive trust on Defendants in the amount of fees allegedly owed.

**Memorandum Opinion and Order – Page 2**

the parties' agreement relate to their fee-splitting arrangement, which Lindley summarized in a letter to Hackard on October 19, 2001, as follows:

> For those cases which are signed up on a 45% contract, including expenses, the fees divided between the firms will be a 20% attorney fee of any settlement to Hackard and Holt and 25% attorney fee to Lindley & Associates. For those clients signed up on a contract less than 45%, the fees will be split on a 50/50 basis.
>
> If I have misinterpreted or you feel that anything needs clarifying, please do not hesitate to contact me.

Appendix to Defendants' Motion for Summary Judgment ("Defs. App.") at 5. Holt responded to the letter through a letter of his own on October 29, 2001, stating that "[t]his letter shall confirm our agreement to work together on diet drug cases against American Home Products. This further confirms that the details of our arrangement are as contained in your October 19, 2001 letter[.]" *Id.* at 6.

In March 2002, Plaintiffs referred a case to Defendants involving Susan Ralph ("the *Ralph* case"). In May 2005, the *Ralph* case settled, and Defendants received the full settlement amount and attorneys fees. In May and June 2005, Lindley demanded his 50% of the 40% contingency fee for the *Ralph* case. Defendants refused to pay Plaintiffs. Plaintiffs subsequently filed this lawsuit. Plaintiffs' second amended complaint, filed October 17, 2006, adds seventeen other cases that Plaintiffs referred, and believe have either been settled, or have preliminary approvals on settlements. Plaintiffs moved for partial summary judgment in December 2005. The facts formulating the basis for that motion and the court's ruling on that motion have not changed; however, additional facts that have since developed form the basis for Defendants' current summary judgment motion. Accordingly, the court will summarize its ruling from Plaintiffs' motion for

partial summary judgment before moving on to the new facts leading to Defendants' summary judgment motion.

The court granted in part and denied in part Plaintiffs' motion on July 31, 2006. Specifically, the court ruled that the letters addressing the parties' fee-splitting arrangement "do not recite that they contain the entire agreement between the parties regarding which cases would be referred, the conditions under which such cases would be referred, and other party responsibilities, such as media and medical expenses." Memorandum Opinion and Order, July 31, 2006, at 8. Accordingly, the court permitted Defendants to introduce parole evidence of additional oral agreements made contemporaneously with the letters that do not vary or contradict the express terms of the fee-splitting agreement contained in the letters. Those contemporaneous oral agreements created genuine issues of material fact as to whether Plaintiffs had performed all conditions precedent under their contract (such as paying for doctors' screening fees), which precluded summary judgment on the issue of breach of contract. *Id.* at 7-8.

The court also ruled on July 31, 2006, that Plaintiffs were entitled to summary judgment on the following affirmative defenses asserted by Defendants: (1) Plaintiff Lindley & Associates is not entitled to recover in the capacity in which it sues and does not have standing to assert any claims, as it is not a separate legal entity and not an active law firm; (2) Plaintiffs' claims are barred by the statute of frauds; (3) Plaintiffs are barred from recovery under the applicable laws regarding fee splitting; and (6) recovery of Plaintiffs' claims would violate the public policy of the State of Texas. The court also granted Plaintiffs' request for a declaratory judgment on the following: (1) the agreement [between the parties] does not violate the statute of frauds; (2) the agreement is not barred under the applicable laws regarding fee splitting among attorneys; (3) enforcement of the agreement

**Memorandum Opinion and Order – Page 4**

would not violate the public policy of the state of Texas; (4) for those cases which are signed up on a 45% [contingency-fee] contract, including expenses, the fees divided between the firms will be a 20% attorney fee of any settlement to Hackard & Holt and 25% attorney fee to Lindley & Associates; and (5) for those clients signed upon a [contingency-fee] contract less than 45%, the fees will be split on a 50/50 basis between Hackard & Holt and Lindley & Associates. *Id.* at 11-12.

Since the court's ruling on Plaintiffs' partial summary judgment motion, Lindley has pleaded guilty to one count of a thirty-five-count federal indictment charging him with various counts of mail fraud, wire fraud, bank fraud, and aiding and abetting. He was convicted of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and sentenced on April 5, 2007, to five years probation and 90 days in the custody of the bureau of prisons.[3] Additionally, he was ordered to pay $50,000 in fines and to surrender his law license. In light of this criminal conviction and Lindley's disbarment, Defendants move for summary judgment on the following five grounds: (1) Lindley was not a mere forwardiNG attorney, and he forfeited his fees by abandoning his clients; (2) Carla Lindley is an improper party, as her community property interest does not make her a real party in interest, and should be dismissed from the suit; (3) under the illegal acts doctrine, Lindley cannot recover a claim for damages because the contract he sues under was tied to his illegal conduct; (4) the doctrine of

---

[3]Lindley pleaded guilty prior to the submission of all the current motions and briefs pending before the court, but had not yet been sentenced. The parties' briefs reference Lindley's impending sentencing. The court, pursuant to Fed. R. Evid. 201, takes jjudicial notice of the judgment imposed by United States District Judge Ed Kinkeade in *United States v. Lindley*, Criminal No. 3:06-CR-19-K, on April 5, 2007, and sets forth the details from that sentencing here in this opinion for clarity. The Indictment, Plea Agreement, and Factual Resume are all contained in Defendants' Appendix, although not certified or verified. Plaintiffs did not object to the documents' lack of certification, but did object to them as prejudicial and inadmissible character evidence under Fed. R. Evid. 404. Defendants have not offered the documents as evidence of Lindley's character, but rather as evidence of a legal bar to Plaintiffs' claims in this case, which forms several bases of Defendants' motion. The court determines that the documeats are relevant to determine the issues contested in Defendants' motion; accordingly, the court **denies** Plaintiffs' motion to strike these documents and will treat them as having been properly filed.

**Memorandum Opinion and Order – Page 5**

unclean hands also bars Lindley from recovering because his conduct in connection with the contract has been unjust and tainted by his criminal conduct; (5) Lindley's disbarment bars him, as a matter of law, from collecting fees for any unresolved cases that he cannot see to completion. The court will address each of these grounds following a summary of the relevant legal standards.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Chelates Corp. v. Citrate*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Chelates*, 477 U.S. at 322-23.

## III. ANALYSIS

### A. Lindley's Duties Under the Contract

Defendants' first ground for summary judgment rests on their contention that Lindley was "not a mere forwarding attorney," and that his failure to assist in the litigation of the Fen-Phen cases he referred constitutes an abandonment of his clients and a forfeiture of his fees. *See* Defendants' Brief in Support of Motion for Summary Judgment ("Defs. Br.") at 7-8. Defendants and Plaintiffs appear to agree that a "forwarding attorney" is one "who merely collects clients and then sends them on to other attorneys[.]" *See id* at 7; *see also* Plaintiffs' Brief in Support of Their Response to

Defendants' Motion for Summary Judgment ("Pls. Br.") at 3 (stating "[a] forwarding attorney's fee is earned when a case is referred."). Defendants, therefore, argue that because Lindley was not a mere forwarding attorney, Plaintiffs had a greater duty to their joint clients, but abandoned those clients and forfeited their fees in the process. Defs. Br. at 7. Defendants cite to Texas case law holding that an attorney who abandons a case forfeits all right to compensation. *Id.* at 17 (citing *Royden v. Ardoin*, 331 S.W.2d 206 (Tex. 1960)). Defendants also point out that a lawyer's disbarment prior to the completion of a contingency-fee contract constitutes a voluntary abandonment. *Id.* (citing *Royden*). Defendants' first ground for summary judgment, thus, rests on two conclusions: first, that the fee-splitting agreement between the parties obligated Lindley to go beyond forwarding the cases to Defendants and to actually assist in the litigation; and second, that Lindley's failure to assist in the litigation constituted abandonment. The court will not grant summary judgment on this ground, because Defendants have not shown that the fee-splitting agreement obligated Lindley to do more than refer cases to them.

     Defendants contend that Lindley was more than a forwarding attorney for several reasons. First, Defendants point to language used by both parties indicating their agreement to "work together" on the diet drug cases. *Id.* at 8-9. Second, Defendants contend that letters sent by Lindley & Associates to clients stating that it was "in a joint venture with Hackard and Holt" implies that Lindley promised to continue working on the cases even after forwarding them. *Id.* at 8. Third, both Hackard and Holt offer declarations that they believed the parties would work together through the conclusion of each case referred. *See* Defs. App. at 1-2, 3-4, Declarations of Michael Hackard and Theodore Holt. Fourth, Defendants point to Lindley's answer to an interrogatory that he spent "tens of thousands of hours" on these cases as evidence that he was more than a mere forwarding attorney.

*Id.* at 10-11. Finally, Defendants offer the declaration of an expert who reviewed all of the above-mentioned evidence and concluded that Lindley's role in the agreement exceeded that of a forwarding attorney.[4]  *Id.* at 10-11.

In response, Plaintiffs contend that the parties' agreement to "work together" meant that Plaintiffs would screen potential clients before referring them to Defendants, who had the job of litigating the actual cases. Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Pls. Response") at 9.  Plaintiffs also allege that the letters sent to clients were intended to inform them that their file was being transferred to Hackard & Holt for litigation, but that the clients could continue to contact Lindley & Associates with questions.  *Id.*  Lindley also offered his own contradictory declaration and the declaration of an expert who believes the evidence does not indicate that Lindley was responsible for assisting with the litigation of the cases he referred.  *See* Pls. App. at 10-48, 51-65, Declarations of Todd Lindley and James McCormack.  Further, Lindley argues that the process of securing and screening more than 500 cases involved a "huge amount of work" that entitled him to the fees he claims, because he was merely a forwarding attorney.  Pls. Response at 12.

As the court noted earlier, the parties never memorialized their agreement to "work together" in a written contract. Nothing that the parties have pointed to as evidence of Lindley's responsibility

---

[4]Defendants' expert Linda Eads notes at one point in her declaration that she reviewed some contracts for the clients referred by Lindley. Def. App. at 66. Eads states that the contracts between the clients and Lindley do not contain provisions indicating that Lindley would act merely as a forwarding attorney–a provision that she believes a prudent forwarding attorney would have included. *Id.* at 66-67. None of the contracts has been offered as evidence for summary judgment, and the court cannot determine whether any language within those contracts clarifies the roles of the attorneys in this case. Moreover, Professor Eads's statement reflects that, in her experience reviewing forwarding-attorney contracts, clear language indicating the forwarding attorney's limited role is typically included; however, that statement alone does not carry the day insofar as summary judgment is concerned. In other words, the absence of such language regarding forwarding attorneys is not conclusive proof that Lindley was not a forwarding attorney.

**Memorandum Opinion and Order – Page 9**

to these Fen-Phen cases makes clear what role he was obligated to play. Defendants complain that Lindley did not attend depositions or assist with pleadings. Defs. Br. at 2. Defendants do not indicate, however, what level of participation by Lindley would have satisfied his obligations under their agreement. To be entitled to his fee under the fee-splitting arrangement, would Lindley have to bill the same number of hours as Defendants? Would simply attending the depositions that occurred in Texas suffice to entitle Lindley to the fees he claims? Defendants are essentially arguing that Lindley has not performed the conditions precedent to trigger their return performance under their agreement. The court has plowed this ground once before when it addressed the reverse argument made by Plaintiffs in their partial summary judgment motion.[5] The evidence is simply insufficient to find one way or the other, since the parties never clarified each party's duty under their agreement. The parties do appear to agree that Lindley was responsible for screening and referring clients to Defendants. In fact, a letter from Holt to Lindley dated May 29, 2005, indicates that Lindley had referred some 1,065 cases to Defendants as of that date. Defs. App. at 66. Taking the facts in the light most favorable to the nonmovant, a reasonable jury could conclude that the parties agreement to "work together" meant only that Lindley would screen and refer clients, nothing more. In short, Defendants have failed to show that no genuine issue of a material fact exists on this point. Whether Lindley was merely a forwarding attorney or whether he was obligated to participate equally in the litigation of these cases is a matter for the jury to determine. Accordingly, the court will deny Defendants' Motion for Summary Judgment on this ground.

---

[5]Defendants, themselves, pointed out in their response to Plaintiffs' partial summary judgment motion that the letters between the parties do not reflect "which firm will undertake specific work related to a particular case, when the referral fees are to be paid, who will be responsible for client contact, who will conduct discovery, and which firm will take the lead on negotiations." Defs. Br. at 7. None of the evidence Defendants presented for their summary judgment motion addresses these important contractual terms.

**Memorandum Opinion and Order – Page 10**

### B. Carla Lindley as Plaintiff

Defendants argue that Carla Lindley should be dismissed from the suit because she is not a proper party. Def. Br. at 19. Defendants contend that Carla Lindley is not a partner or owner of Lindley & Associates, and was never a party to the contract between Lindley & Associates and Defendants. *Id.* In response, Plaintiffs argue that Carla Lindley "has done work for Lindley & Associates in the past," and "is entitled to half the proceeds from Lindley & Associates[.]" Pls. Br. at 7. Plaintiffs also contend through their Second Amended Complaint, the live pleading in this case, that "Todd Lindley and Carla Lindley, who hold Texas law licenses, own 100 percent of the firm"; however, the Second Amended Complaint also states one paragraph later that Carla Lindley "has a community property interest in the outcome of this suit."

The court determines that Carla Lindley is not a real party in interest in this case. Under the rules of civil procedure, every action must be prosecuted "in the name of the real party in interest." Fed. R. Civ. P. 17(a). A real party in interest is a "party who, by the substantive law, has the right sought to be enforced." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir. 1980); *see also* Black's Law Dictionary defining a real party in interest as a "person entitled under the substantive law to enforce the right sued upon[.]" Black's Law Dictionary 1154 (8th ed. 2004). In this case, Carla Lindley is not entitled to enforce the contract at issue, since she is not a party to the contract and has no ownership interest in the law firm of Lindley & Associates. Plaintiffs do not dispute that Carla Lindley was never a party to the contract at issue. Moreover, nothing in the record reflects that she was ever a party to the contract. Further, nothing in the record reflects that she was ever a partner in the firm of Lindley & Associates, and there is no evidence of her direct ownership in the firm. The court realizes that the live pleading in this case alleges that

**Memorandum Opinion and Order – Page 11**

Todd and Carla Lindley "own 100 percent of the firm"; however, nothing in the record supports this allegation. More importantly, in Carla Lindley's declaration, she does not state or even intimate that she is an owner or partner of Lindley & Associates, which would have been the appropriate place to declare and aver that she had an ownership interest. Thus, even though the Second Amended Complaint alleges that Carla Lindley has a direct ownership interest, such allegation is not supported by competent summary judgment evidence. The court recognizes that Carla Lindley has a community property interest here, and Defendants agree that, at most, Carla Lindley has a community property interest, but such interest does not give her a substantive right to enforce the contract at issue. Accordingly, the court dismisses Carla Lindley as an improper plaintiff.

### C. Illegal Acts and Unclean Hands

In grounds three and four, Defendants contend that Todd Lindley's fraud conviction taints the claims at issue in this suit, and bars him from recovering. Defs. Br. at 20-24. Specifically, Defendants contend that Lindley financed his diet drug litigation through his fraudulent acts which taint the claims he asserts in this action. Def. Br. at 22. Lindley responds that the injuries forming the basis of his claims in this suit are in no way caused or related to the conduct he admitted to in his guilty plea. Pls. Br. at 10.

Under Texas law, "no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 450 (Tex. App.–Houston [1st Dist.] 1993) (citing *Gulf, C. & S.F. Ry. Co. v. Johnson*, 9 S.W.602, 603 (Tex. 1888)). In other words:

> where it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he

> cannot recover; but if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude recovery.

*Id*. (citing *Gulf*).  In this case, Lindley pleaded guilty to engaging in a scheme to defraud investors who gave him money to construct a senior care facility. *See United States v. Lindley*, No. 3:05-CR-19-K, Factual Resume at 1-2; Indictment at 1-2.  Lindley's factual resume, which he signed, states that he "converted investor money to his own purpose, among other things[,] to finance his prosecution of personal injury litigation." Factual Resume at 3.

The court does not believe the illegal-acts or unclean-hands doctrine applies to this case. First, the factual resume merely states that Lindley used the investor funds for his own purpose, including the financing of his "personal injury litigation." Factual Resume at 3.  No mention is made of the Fen-Phen diet litigation at issue in this case, and, thus, the required nexus has not been established. Second, even if Defendants could conclusively establish that the investor funds went directly to pay for Lindley's recruitment or screening of Fen-Phen clients, the court fails to see how that illegal act contributed to the damages he now seeks through this breach of contract suit for unpaid referral fees.  Defendants argue that Lindley's promise to work together with Hackard & Holt "was dependent upon the illegal funds he funneled into his practice."  Defs. Br. at 22.  Defendants also argue that whether the illegal funds were used for diet drug advertisement, or "whether Lindley used the embezzled funds to purchase paper clips, his ability to perform in the joint venture derived in at least some part from his wrongdoing, as he admitted." *Id.*  These allegations are unsupported by any evidence, and are inconsistent with Defendants' prior assertions that Defendants paid for the marketing campaign to recruit potential Fen-Phen clients, and that Plaintiffs failed to pay for echo-cardiogram screenings of those potential clients as required by their agreement. *See* Defendants'

Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support at 3. Defendants' argument also misses the mark with respect to the illegal-act or unclean-hands doctrines, which enforce a public policy of precluding recovery for damages resulting from the willful commission of crimes. *See Sacks v. Sawtell, Goode, Davidson & Trolio*, 880 S.W.2d 466, 407-71 (Tex. App.–Houston [1st Dist.] 1993, no writ). The question is whether the summary judgment evidence conclusively establishes that Lindley's "illegal conduct is not incidental to his claims; it is inextricably intertwined with those claims." *See Dover*, 859 S.W.2d at 451. Here, Lindley's illegal act involved the swindling of nursing home investors, not the referral of Fen-Phen clients. Just because Lindley was engaged in criminal conduct at the time his claim for breach of contract arose, does not, alone, bar Plaintiffs' claim under the illegal-acts or unclean-hands doctrine. Defendants have failed to show that Lindley's illegal acts *caused* or *contributed* to the damages he now claims for fees owed in an unrelated, legitimate contract with Defendants for legal referrals. Accordingly, the court will deny Defendants' summary judgment motion on grounds of illegal acts or unclean hands.

### D.  Lindley's Disbarment

In Defendants' final ground for summary judgment, they argue that Lindley's disbarment as a condition of his felony conviction will prevent him from completing work on the many unresovled cases he referred, which extinguishes his right to recover fees as a matter of law. Defs. Br. at 24. Defendants cite to Texas case law stating that when an attorney "prior to the completion of his contingent fee contract is disbarred or suspended, he is not entitled to collect either on the contract or quantum meruit for the services, if any, that have been rendered. *Id.* at 24-25 (citing *Lee v. Cherry*, 812 S.W.2d 361, 363 (Tex. App.–Houston [14th Dist.] 1991, writ denied). In response,

Plaintiffs argue that this ground should fail because Defendants have not established "which cases have settled and which cases haven't." Pls. Br. at 11-12.

Both parties have missed the point on this issue. Lindley's disbarment and his inability to continue working on cases are only relevant if the agreement between the parties requires Lindley to do more than simply refer the cases to Defendants. As the court explained earlier, the parties have not (and apparently cannot) establish through the summary judgment evidence what conditions precedent on the part of Plaintiffs trigger Defendants' duty to split the legal fees collected in the referred Fen-Phen cases. If Lindley was a mere forwarding attorney, as he maintains, then his disbarment after he has fulfilled his end of the bargain will not affect his right to collect the fees he has already earned. Since a genuine issue of a material fact exists as to each party's duties under the disputed contract, the court cannot grant summary judgment on this ground.

## IV. RELATED MOTIONS

The parties filed several motions related to Defendants' summary judgment motion: Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence and Brief in Support, filed February 28, 2007; Defendants' Evidentiary Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence and Brief in Support, filed March 15, 2007; and Plaintiffs' Motion to Strike Defendants' Out-of-Time Evidence Filed March 14, 2007 and Mislabled Appendix to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence, filed March 20, 2007. Both parties argue that the other's summary judgment evidence relies on self-serving declarations that include inadmissable hearsay evidence.[6] Plaintiffs also argue that Defendants'

---

[6]Frankly, the court agrees with all parties that each of their declarations is indeed self-serving. In fact, entire portions of Plaintiffs' Response to Defendants' Motion for Summary Judgment are copied verbatim from the Declaration of Todd Lindley. That the declarations are self-serving, however, does not make them inadmissible. The contradictory evidence submitted by the parties merely underscores that credibility is at

**Memorandum Opinion and Order – Page 15**

expert report is unsworn, and from an unqualified expert. Defendants argue that Plaintiffs' expert was not properly or timely designated. In light of its ruling and explanations in this opinion, the court **denies as moot** Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence; **denies as moot** Defendants' Evidentiary Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence; and **denies as moot** Plaintiffs' Motion to Strike Defendants' Out-of-Time Evidence Filed March 14, 2007 and Mislabled Appendix to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence.

## V.  CONCLUSION

The court determines that genuine issues of material fact exist regarding Plaintiffs' contract conversion and partnership liability claims. The court hereby determines that Carla Lindley is not a proper party. After a complete review of the record, the court determines that there are too many unresolved fact questions, and, therefore, summary judgment would be unwarranted.

For the reasons stated herein, genuine issues of material fact exist in this action. The court, therefore, **denies** Defendants' Motion for Summary Judgment in all respects, except it **dismisses** Carla Lindley, as she is an improper plaintiff; **denies as moot** Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence; **denies as moot** Defendants' Evidentiary Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence; and **denies as moot** Plaintiffs' Motion to Strike Defendants' Out-of-Time Evidence Filed March 14, 2007 and Mislabled Appendix to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence. **The court strongly urges the parties to recognize the strengths and weaknesses of their**

---

issue, and the court cannot make credibility determinations in ruling on a summary judgment motion.

**Memorandum Opinion and Order – Page 16**

**respective cases and work together toward a joint resolution; otherwise, this case will be tried by a jury on the matters not resolved by the court's two summary judgment orders.**

   **It is so ordered** this 13th day of April, 2007.

                                       _____
                                       Sam A. Lindsay
                                       United States District Judge